## WEIGERT v. SCHLESINGER et al.

(Supreme Court, Appellate Division, Second Department. May 1, 1912.)

1. FRAUDS, STATUTE OF (§ 152*)—PLEADING—NECESSITY.

Where, in an action to enforce specific performance of an oral agreement to hold title to real estate in trust, the statute of frauds was not pleaded, the question whether there was sufficient evidence of part performance to take the case out of the statute was immaterial.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 363–366, 371, 372; Dec. Dig. § 152;* Specific Performance, Cent. Dig. § 119.]

2. TRUSTS (§ 44*)—ORAL AGREEMENT TO HOLD TITLE IN TRUST—EVIDENCE—SUFFICIENCY.

Evidence held not to show that a wife named as grantee of land, purchased and paid for by her husband, agreed to hold the land in trust for him to convey to any person when he would sell the same.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 66–68; Dec. Dig. § 44.*]

3. HUSBAND AND WIFE (§ 49½*)—GIFTS FROM HUSBAND TO WIFE—ACTS CONSTITUTING.

That a husband purchased land and paid the price out of his own funds, taking the title in the name of his wife, is, when unqualified and unexplained, some evidence of a gift, and, though he had no clear intention to give the property absolutely to her, the effect of what he did was to create in law a gift to her.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 249–255, 257; Dec. Dig. § 49½.*]

4. TRUSTS (§ 81*)—RESULTING TRUSTS—CREATION.

Where a husband purchasing land and paying the price out of his own funds took the title in the name of his wife, she did not take it in trust

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

within Real Property Law (Consol. Laws 1909, c. 50) § 94, declaring that one who takes a conveyance in his own name without the consent or knowledge of the one paying the consideration is a trustee.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 115–118; Dec. Dig. § 81.*]

5. TRUSTS (§ 81*)—RESULTING TRUSTS—CREATION.

Where a wife taking the title to land purchased by the husband, who paid the price, did not agree to hold the property on any trust, she did not hold the land in trust within Real Property Law (Consol. Laws 1909, c. 50) § 94, providing that no trust results, unless the grantee in violation of some trust purchases property. so conveyed with money of 'another.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 115–118; Dec. Dig. § 81.*

For other definitions, see Words and Phrases, vol. 8, pp. 7116–7124; vol. 8, p. 7822.]

Rich and Woodward, JJ., dissenting.

Appeal from Special Term, Kings County.

Action by Aaron M. Weigert against William Schlesinger and others. From a judgment dismissing the complaint on the merits, plaintiff appeals. Affirmed.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, WOODWARD, and RICH, JJ.

B. W. B. Brown, of New York City, for appellant.
Arnold L. Davis, of New York City, for respondents.

BURR, J. Plaintiff was married to Flora Schlesinger on August 21, 1892. She died September 30, 1910, intestate, leaving her surviving as her only heirs at law the defendants William Schlesinger, Frank Schlesinger, Frederick Schlesinger, and Solomon Jacobs. On August 13, 1903, plaintiff entered into a contract for the purchase from one Minnie E. Adams of property at the corner of Bay Parkway and Benson avenue. When the contract for purchase was completed, the name of Flora Weigert was inserted in the deed at plaintiff's request. The entire purchase money was paid by him. Plaintiff and his wife occupied the said premises as their residence during their joint lives, and since her death plaintiff has continued to occupy and is now occupying the same. The interest on the mortgage, the taxes, assessments, water rents, premiums of fire insurance, together with all expenses of repairs, have been paid by him. This action is brought to enforce specific performance of an alleged oral agreement on the part of Flora Weigert to the effect that:

"If the plaintiff would pay for the said premises and would take the title thereto in the name of the said Flora Weigert, she, the said Flora Weigert, would hold the title in trust for him and would convey the said premises, on the demand of the plaintiff, to any person or persons to whom this plaintiff would sell the same, and would immediately turn over the proceeds of such sale to this plaintiff, and that in case this plaintiff should not sell the said premises, the said Flora Weigert would then, on demand of this plaintiff, convey the said premises to this plaintiff, or to any person to whom this plaintiff directed the said Flora Weigert to convey the said premises."

[1] It is unnecessary to consider whether there is sufficient evidence of part performance to take the case out of the statute of frauds

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

(McKinley v. Hessen, 202 N. Y. 24, 95 N. E. 32; Gallagher v. Gallagher, 135 App. Div. 457, 120 N. Y. Supp. 18, affirmed 202 N. Y. 572, 96 N. E. 1115), as defendants have not pleaded the same.

[2] The difficulty with plaintiff's case is that the evidence fails to establish the existence of the oral agreement alleged. The strongest testimony upon that point is the testimony of Jacob Hannauer. He testified to a conversation with Flora Weigert in August, 1903. The exact date is not fixed, but we will assume that it was in the interval between the making of the contract and the delivery of the deed. He testified that Flora Weigert said to him:

"'Well, you know, Aaron bought the house, and he wants to put the house in my name. Come inside, I want to talk to you about something.' We went inside, and she said: 'Jake, I want to talk to you about a house Mr. Weigert bought. He wants to put the house in my name, and I don't think it is right. He should not.' So I said: 'It is right to put it in your name, because, although we are in business to-day, you can never tell what is going to happen in business, and he should put it in your name. Then, of course, any time he needs money and should sell the house, you convey it to him or to anybody that he wants to sell it to.' She said: 'Well, if you think that is the right way, we will do it that way.'"

It will be observed that Flora Weigert testifies to no proposition or suggestion from her husband, still less an agreement upon her part that she was to hold the property in trust for him. Her statement would indicate an intention upon his part to give it to her. It is true that the witness advised her that, if the house were put in her name and her husband needed the money, she could sell it and convey it to him or anybody that he wanted to sell it to, but, although that was his advice, there is no evidence that she ever agreed to do anything of the sort, or that such a proposition was ever made to her by her husband. Her statement of the conversation between herself and her husband was to the effect that the latter desired to put the house in her name, without any agreement respecting the same, or any qualification of her absolute title therein. Again, the suggestion of Hannauer imports a condition which has not arisen, and that is that plaintiff's business circumstances were such that he needed the money. That no other condition than this was even suggested is apparent from her further testimony that talking with the witness one day about her husband's business, and being informed that it was good, she said, "I hope we don't have to sell the house, so I can always live in it," and on another occasion she said, referring to his business prospects: "Well, then, Aaron Weigert don't have to sell the house. Won't have to sell it then, can always live in it."

Other witnesses were called who testified to conversations with Flora Weigert, in which she said that Aaron had bought the house, and she hoped he had done well for himself, and that she believed he would make some money from it. She always spoke of it as his house. When application was made to her to sell the house, she said that she did not own it, and could make no arrangements as to its sale.

All of this testimony is entirely consistent with such a situation as this. Plaintiff bought the house and put the title in his wife's name,

without any condition or agreement whatsoever. Recognizing that his money had purchased the house, she was quite willing to speak of it as his, and perhaps she would have been willing to have conveyed the house at any time that he requested to any person named by him. But, so far as the evidence discloses, this was not because she had agreed with him to do so, but because of her affection for and loyalty to him. It is entirely possible that neither the plaintiff nor his wife anticipated the condition which has arisen, and it may be that he erroneously supposed that if she died intestate, as there were no children, he would inherit the property from her. But, whatever the fact may have really been, we can find no evidence of an agreement upon her part to hold it in trust for him, and we think that all of her expressions with regard to willingness to sell at his request can be equally well referred to a benevolent disposition upon her part as to, an enforceable agreement so to do. Mr. Justice Marean in his opinion at the Special Term forcibly says:

"If your contention were right, if there were any such agreement, and he had died instead of she, his heirs could have got this property away from this wife. Do you mean to say that you think there was ever anything like that, or that I would be warranted in finding, on the circumstances of this case, that she had any such title as that?"

The court, at Special Term, found that the plaintiff purchased the premises in question as a gift to his wife. The accuracy of this finding of fact is challenged by the appellant, who says that the law does not presume in favor of a gift, but requires proof of it. Tilford v. Bank for Savings, 31 App. Div. 565, 52 N. Y. Supp. 142; Grey v. Grey, 47 N. Y. 552; Lewis v. Merritt, 113 N. Y. 386, 21 N. E. 141; Devlin v. Greenwich Savings Bank, 125 N. Y. 756, 26 N. E. 744.

[3] The fact that he took title in her name, when he had furnished the money to purchase the same, unqualified and unexplained, would be some evidence of a gift, but, if he may not have had a clearly developed intention in his mind to give the property absolutely to his wife, the effect of that which he did was, in law, to create a gift to her.

[4, 5] The Real Property Law (Consolidated Laws, c. 50 [Laws 1909, c. 52] § 94) provides that where a grant is made to one and the consideration paid by another, except in the case of creditors, "the title vests in the grantee, and no use or trust results from the payment to the person paying the consideration, or in his favor, unless the grantee either (1) takes the same as an absolute conveyance, in his own name, without the consent or knowledge of the person paying the consideration; or (2) in violation of some trust, purchases the property so conveyed with money or property belonging to another." The same language appears in the Real Property Law, which was in force when the conveyance was made. Laws 1896, c. 547, § 74. There is no evidence that Flora Weigert took the conveyance of the property in her name without the consent or knowledge of the plaintiff. Plaintiff's evidence is to the contrary. If, as it seems to us, there was no agreement to hold the property upon any trust proven, there can be no violation of such trust. See Angermiller v. Ewald,

133 App. Div. 691, 118 N. Y. Supp. 195; Fagan v. McDonnell, No. 1, 115 App. Div. 89, 100 N. Y. Supp. 641, affirmed 191 N. Y. 515, 84 N. E. 1112.

It seems a hardship that property which the plaintiff bought and paid for should upon the death of his wife pass out of his possession and control, but upon the evidence here presented we can discover no ground which entitles him to the relief asked for. The judgment should be affirmed, but, under the circumstances, without costs.

JENKS, P. J., and HIRSCHBERG, J., concur.

RICH, J. I dissent. The plaintiff bought this property for a home, and paid for it. It was occupied by himself and his wife during her lifetime, and now the home he paid for is to go to these defendants because they happen to be relatives of his deceased wife. I cannot believe that the plaintiff purchased the property without some understanding as to its ownership. It was not permissible for the plaintiff to testify, and we are to ascertain the intention of the husband and his wife when the deed was taken from the facts stated, the circumstances, and the meager evidence disclosed by the record.

Jacob Hannauer, a business partner of the plaintiff, testified that after the contract was executed and before title was taken Mrs. Weigert said to him:

"Aaron bought the house, and he wants to put the house in my name. * * * I don't think it is right. * * * I said: 'It is right to put it in your name. * * * Any time he needs money and should sell the house, you convey it to him or to anybody that he wants to sell it to.' She said: 'Well, if you think that is the right way, we will do it that way.'"

And the title was taken in her name. Afterwards she repeatedly asserted that the property belonged to her husband, that he bought the house, that she did not own the house, and arrangements for its sale must be made with her husband, who owned it. If she said these things, and it is in no way contradicted, it is inconsistent with the claim that the property was given to her, but is consistent with the claim of the plaintiff.

I must vote for reversal of the judgment.

WOODWARD, J., concurs.